48

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT

for the

Eastern     District of  Michigan

| | |
|---|---|
| Donville O'Neil Inniss<br>_Petitioner_<br><br>v.<br><br>Warden Jonathan Hemingway<br>_Respondent_<br>_(name of warden or authorized person having custody of petitioner)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case:1:22-cv-11991<br>Judge: Ludington, Thomas L.<br>MJ: Altman, Kimberly G.<br>Filed: 08-24-2022 At 03:06 PM<br>HC INNISS V. HEMINGWAY (DA) |

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  . (a) Your full name:     Donville O'Neil Inniss

   (b) Other names you have used:

2.   Place of confinement:

   (a) Name of institution:   Milan Federal Correctional Institution

   (b) Address:        P.O. Box 1000

          Milan, Michigan 48160

   (c) Your identification number:     70853-018

3.   Are you currently being held on orders by:

   ☒ Federal authorities       ☐ State authorities       ☐ Other - explain:

4.   Are you currently:

   ☐ A pretrial detainee (waiting for trial on criminal charges)

   ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

   If you are currently serving a sentence, provide:

   (a) Name and location of court that sentenced you:    United States District Court

      for the Eastern District of New York

   (b) Docket number of criminal case:   18-CR-134 (KAM)

   (c) Date of sentencing:   April 27, 2021

   ☐Being held on an immigration charge

   ☐Other _(explain)_:

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.   What are you challenging in this petition:

☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other *(explain)*: _____

_____

_____

6.   Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court: _____

_____

(b) Docket number, case number, or opinion number: _____

(c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

_____

_____

_____

(d) Date of the decision or action: _____

## Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: _____ Unit Team, FCI-Milan, Federal Bureau of Prisons

(2) Date of filing: 08/03/2022

(3) Docket number, case number, or opinion number: n/a

(4) Result: No response to date

(5) Date of result: _____

(6) Issues raised: Inaccurately/incompletely calculated First Step Act Time Credits - As of August 15, 2022, I am due an additional 131 days of FTC's which will bring my release date to September 16, 2022.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

 

(b)  If you answered "No," explain why you did not appeal: _____

_____

8.    **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☒ Yes                    ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:   Warden Jonathan Hemingway, FCI-Milan

(2)  Date of filing:   08/16/2022

(3)  Docket number, case number, or opinion number:   Not yet assigned

(4)  Result:   No response to date

(5)  Date of result: _____

(6)  Issues raised:   same as above

(b)  If you answered "No," explain why you did not file a second appeal: _____

_____

9.    **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes                    ☒ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court: _____

(2)  Date of filing: _____

(3)  Docket number, case number, or opinion number: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____
_____

(b)  If you answered "No," explain why you did not file a third appeal:    Next level of appeal
(to BOP Regional Counsel) cannot be filed until a response to the last level
of appeal has been received.

10.  **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes             ☒ No

If "Yes," answer the following:

(a)  Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes             ☐ No

If "Yes," provide:

(1)  Name of court:    _____
(2)  Case number:    _____
(3)  Date of filing:    _____
(4)  Result:    _____
(5)  Date of result:    _____
(6)  Issues raised:    _____
_____
_____
_____
_____
_____

(b)  Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A),
seeking permission to file a second or successive Section 2255 motion to challenge this conviction or
sentence?

☐ Yes             ☐ No

If "Yes," provide:

(1)  Name of court:    _____
(2)  Case number:    _____
(3)  Date of filing:    _____
(4)  Result:    _____
(5)  Date of result:    _____
(6)  Issues raised:    _____
_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____

(c)   Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
      conviction or sentence: _____
_____
_____
_____
_____
_____
_____
_____

11.   **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes                    ☒ No

If "Yes," provide:

(a)   Date you were taken into immigration custody: _____

(b)   Date of the removal or reinstatement order: _____

(c)   Did you file an appeal with the Board of Immigration Appeals?

      ☐ Yes                    ☐ No

      If "Yes," provide:

      (1) Date of filing: _____
      (2) Case number: _____
      (3) Result: _____
      (4) Date of result: _____
      (5) Issues raised: _____
_____
_____
_____
_____
_____

(d)   Did you appeal the decision to the United States Court of Appeals?

      ☐ Yes                    ☐ No

      If "Yes," provide:

      (1) Name of court: _____
      (2) Date of filing: _____
      (3) Case number: _____
      (4) Result: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

     (5)  Date of result: _____

     (6)  Issues raised: _____

_____

_____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes        ☒ No

If "Yes," provide:

(a)  Kind of petition, motion, or application: _____

(b)  Name of the authority, agency, or court: _____

_____

(c)  Date of filing: _____

(d)  Docket number, case number, or opinion number: _____

(e)  Result: _____

(f)  Date of result: _____

(g)  Issues raised: _____

_____

_____

_____

_____

_____

### Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

GROUND ONE:    The BOP has inaccurately and incompletely calculated and applied First Step Act Time Credits towards my sentence of incarceration.

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

Under the First Step Act, the Federal Register, and current BOP Guidance, I

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

qualify for 15 FTC days for every 30 days in prison, and those FTC days are to be credited toward early release. As of 08/15/22, I have served over 12 months, so I am due 190 FTC days, but only 59 FTC days have been applied to my sentence. The additional 131 FTC days will bring my release date to early September 2022 (next month).

(b)  Did you present Ground One in all appeals that were available to you?

☒ Yes          ☐ No

**GROUND TWO:**    n/a

(a)  Supporting facts *(Be brief. Do not cite cases or law.)*:

(b)  Did you present Ground Two in all appeals that were available to you?

☐ Yes          ☐ No

**GROUND THREE:**   n/a

(a)  Supporting facts *(Be brief. Do not cite cases or law.)*:

(b)  Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☐ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**  n/a

_____

_____

_____

(a)  Supporting facts *(Be brief. Do not cite cases or law.):*

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☐ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did
not:  _____

_____

_____

_____

### Request for Relief

15. State exactly what you want the court to do:  An immediate Court Order directing the BOP to
recalculate and apply my FTC days towards early release pursuant to the First Step
Act, and to submit  me for consideration of immediate  transfer to halfway house or
homes confinement if time remains on my prison sentence after FTC days are correctly
calculated and applied.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:  08-19- 2022

_____
Signature of Petitioner


_____pro se_____
Signature of Attorney or other authorized person, if any

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DONVILLE O'NEIL INNISS,

      Petitioner,

v.                              Case No. To Be Determined

WARDEN JONATHAN HEMINGWAY,

      Respondent.

_____/

## BRIEF AND MEMORANDUM OF LAW AND FACT IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 USC §2241

COMES NOW, Donville Inniss, pro se petitioner, and has petitioned this Court to order the Federal Bureau of Prisons ("BOP") to recalculate his earned First Step Act Time Credits ("FTC's") and apply them towards his early release as proscribed by Congress in the First Step Act and enacted by the Department of Justice ("DOJ") in the Federal Register. Once properly applied, Mr. Inniss's sentence will be complete on September 16, 2022. In support of this claim, Mr. Inniss submits:

### FACTUAL BACKGROUND

Mr. Inniss was convicted of non-violent financial crimes by the U.S. District Court for the Eastern District of New York. He was sentenced to 24 months of imprisonment and 2 years of supervised release. He began serving his sentence on 07/30/2021. As of the filing of this Petition, Mr. Inniss has served more than 12 months in prison. During that time he has maintained a MINIMUM PATTERN Score over two or more consecutive risk and needs assessments by his BOP Unit Team. EXHIBIT A.

Mr. Inniss's full term release date is 07/26/2023. The BOP has properly credited him with statutory Good Conduct Time ("GCT") of 108 days, giving him a "statutory

release" date of 04/09/2023. The BOP has determined that Mr. Inniss is eligible
to earn and apply First Step Act Time Credits in addition to his GCT days. On
01/20/2022, the BOP calculated the Mr. Inniss had earned 59 days of FTC, and those
days were credited against his release date, resulting in a new projected release
date of 02/09/2023 "VIA FSA REL." EXHIBIT B is the BOP's documentation of this
time credit application.

However, since 01/20/22, the BOP has failed to recalculate or apply the FTC days
he has earned in the time between then and now. BOP's current policy is to not calculate
an inmate's FTC credits again until a new automated computer program does it for
them. EXHIBIT C. As of the date of this filing, that computer program has not yet
been implemented, and thus, Mr. Inniss has had no further FTC days credited or applied
towards his release as prescribed by law.

Briefly presented, under the legal standards described below, Mr. Inniss qualifies
for 15 days of FTC for every 30 days of his sentence served. He has served over
12 months of his sentence, meaning that he has earned a total of 190 FTC days.
The BOP has credited him with 59. The remaining  131 FTC days that have yet to
be credited to Mr. Inniss or applied to his release date would bring his release
date to 09/16/22, less than 5 weeks from the drafting of this petition.

## EXHAUSTION

The BOP has a four-step process for resolving administrative complaints by a
prisoner. 28 CFR §542.10. First, the prisoner must attempt to informally resolve
the issue with BOP staff through a an "Attempt ay Informal Resolution" form, (aka
"BP-8"). Next, the prisoner must submit a formal "Request for Administrative Remedy"
form (aka "BP-9") to the Warden. The final two steps include formal appeals of
the Warden's decision to the BOP Regional Counsel and BOP Central Counsel respectively.

Mr. Inniss filed a paper "Inmate Request" to his Unit Team on 05/19/22 and a BP-8
on 08/03/22. EXHIBIT D. He followed-up with an email directly to the Warden who
advised Mr. Inniss in person to go ahead and prepare and submit

-2-

a formal Request for Administrative Remedy (BP-9) directly to his office, which Mr. Inniss did. EXHIBIT E. Mr. Inniss has not received a response to any of the above attempts at exhaustion. Per BOP Policy, he cannot file a BP-10 without a response to his BP-9.

STANDARDS

A prisoner's Petition for Writ of Habeas Corpus claiming that the BOP has incorrectly calculated his sentence of imprisonment under federal law is cognizable under 28 U.S.C. §2241. Woody v. Marberry, 178 F. Appx. 468 (6th Cir. 2006).

It is well-settled law that federal prisoners must exhaust their administrative remedies before seeking relief under §2241. United States v. Wilson, 503 U.S. 329, 334-36, 112 S. Ct. 1351 (1992). However, an exception exists when the prisoner demon-strates due diligence to exhaust but fully exhausting his remedies may lead to irreparable harm. McCarthy v. Madigan, 503 U.S. 140, 146-47, 112 S.Ct. 1081 (1992).

The First Step Act allows qualified prisoners to earn time credits for rehab-ilitation programs. Those FTC's can then be applied toward early release from prison. See 18 U.S.C. §3632 and §3624. Under the Final Rule published in the Federal Registry on January 19, 2022, the first 365 days of FTC days earned by a qualified federal prisoner are to be applied towards early release to supervised release. 28 C.F.R. §523.44.

ARGUMENTS

## I. WAIVING THE EXHAUSTION REQUIREMENT WILL AVOID IRREPARABLE HARM

Simply stated, being held in prison beyond the end of his projected prison sentence will result in irreparable harm to Mr. Inniss. Once properly calculated and applied, 131 additional FTC days will bring Mr. Inniss's release date to 09/16/22, about 5 weeks from now. The BOP's four-tiered administrative remedy process requiring consecutive reviews and responses from local, regional, and then national BOP general counsels will take 12 weeks in a best-case scenario given the time constraints

-3-

outlined in the Code of Federal Regulations. In reality, given allowable extensions
and routing time, the average administrative remedy takes 6-9 months to complete.

With only 5 weeks until release under federal law, completing the administrative
remedy process would result in Mr. Inniss being incarcerated beyond his release
date, causing irreparable harm. Therefore, the exhaustion requirement should be
waived.

In a substantially similar and therefore instructive case, the district court
waived exhaustion in ordering the BOP to recalculate the prisoner's release date
based on earned FTC days. Stewart v. Warden, 2022 U.S. Dist. LEXIS 100512, at
*6-8 (N.D. Ala. May 10, 2022). In Stewart, the prisoner filed his §2241 claim
in April 2022, claiming that once properly calculated with FTC days, his new release
date would be in August 2022. In May, the district court agreed, granting his
petition and ordering the BOP to recalculate his release date pursuant to the
First Step Act. Regarding exhaustion, the district court opined:

> [E]xhaustion may be excused where "requiring resort to the
> administrative remedy may occasion undue prejudice to
> subsequent assertion of court action." This occurs when a
> petitioner can show "irreparable harm if unable to secure
> immediate judicial consideration of his claim."
> [Defendant] did not exhaust his administrative remedies.
> Nonetheless, considering [Defendant]'s impending release
> date, balancing the interests favors promptly deciding the
> issues [Defendant] raises over the institutional interests
> protected by the exhaustion defense.

(quoting McCarthy, 503 U.S. at 147).

In Stewart, the Court waived exhaustion when the prisoner filed his claim
4-5 months prior to his "new" release date based on the potential for irreparable
harm. Here, Mr. Inniss has less than 5 weeks until his "new" release date. Because
the potential for prejudice is so much greater, exhaustion should be waived for
Mr. Inniss.

## II. MR. INNISS QUALIFIES TO EARN AND APPLY FTC DAYS

There should be no dispute that Mr. Inniss qualifies for earned and applied FTC days under the First Step Act and its codified statutes, particularly 18 USC §3632. EXHIBIT B is a BOP document commonly referred to as a "sentence computation form" that was generated and given to Mr. Inniss by BOP Staff. It clearly designates Mr. Inniss as "eligible," and also presents a new release date based upon his first allotment of 59 FTC days.

## III. THE BOP INCORRECTLY CALCULATED
## MR. INNISS'S INITIAL ALLOTMENT OF FTC DAYS

In Stewart, the government filed a Declaration from Susan Giddings, Chief of the Unit Management Section of the Correctional Programs Branch of the Federal Bureau of Prisons. EXHIBIT C ("Giddings Declaration"). This Declaration details how FTC days should be calculated for qualified inmates like Mr. Inniss. These details are also included in the Stewart decision:

> [T]he BOP is calculating credit based on the total number of days in the inmate's designated facility divided by 30 days (one-month average) and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels). BOP uses the date the inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, which-ever is later, as the start date for calculation purposes.

Here, Mr. Inniss arrived at his designated facility (Big Springs) on July 30, 2021. The BOP credited Mr. Inniss with 59 FTC days for the period from July 30, 2021 to December 25, 2021. However, the period is 148 days. (140/30)*15 is 74. Mr. Inniss should have been credited 74 days for that period based upon the BOP's own calculation method.

## IV. THE BOP SHOULD CALCULATE AND APPLY
## THE FTC DAYS EARNED BY MR. INNISS SINCE 12/25/21

To date, Mr. Inniss has received no FTC days for his time in prison from

12/26/2021 to the present. As of the drafting of this petition on 08/15/2022, that results in an additional 233 days of incarceration unaccounted for. Using the BOP's calculation from the Giddings Declaration, (233/30)*15=116.5, resulting in 116.5 additional FTC days for which Mr. Inniss has not been credited. In total (adding the corrected 74 FTC days earned through 12/25/2021), Mr. Inniss has earned 190.5 days of FTC through 08/15/2022. Applying those days to his sentence results in a new release/sentence completion date on or around 09/16/2022.

In the Giddings Declaration, the BOP's only response to their failure to calculate and apply FTC days as they are required to do by law is that they have decided not to because it's too much work. In the BOP's own words (Gidding Declaration, pages 7-8):

> For the purposes of FSA time credit calculations, BOP is in the process of creating and implementing an application to fully automate calculations so that ORE will no longer have to manually calculate time credits for each inmate. BOP expects to "go live" with this application in the coming months.
>
> In the meantime, the BOP decided to set certain cutoff dates for manual FSA time credit calculations to ease the burden on staff. Once an inmate's time credit is calculated, it will not be recalculated again until the implementation of the automated computation system. In other words... Petitioner's calculation will remain [unchanged] despite his eligibility to earn additional days each month.

While "easing the burden on staff" may be a laudible goal, it is an unacceptable subversion of federal law and Congressional intent when the result prolongs Mr. Inniss's (or any inmate's) incarceration beyond their statutory release date. The Stewart Court agreed, stating:

> Respondent does not expressly dispute that [Defendant] has earned additional ETC between BOP's calculation on December 25, 2021, and April 28, 2022, which could result in an earlier release date. If [Defendant] has indeed earned additional credits during his time, then they should be awarded to him and reflected in his sentence. Additionally, because of the uncertainty of the automated system's implementation and [Defendant]'s approaching release date,

it is necessary for BOP to reevaluate the application of
[Defendant]'s credits at regular intervals...

The same reasoning applies to Mr. Inniss.

## V. STEWART IS SUBSTANTIALLY SIMILAR AND
## THEREFORE INSTRUCTIVE FOR THIS CASE

The Magistrate Judge's Report and Recommendation in Stewart v. Warden is attached
here as EXHIBIT F because it includes an exhaustive history of FSA time credits
that may be convenient for this Court. The R&R was adopted and the Writ of Habeas
Corpus was granted by the district court. Stewart v. Snider, 2022 U.S. Dist. LEXIS
100482 (N.D. Ala., June 6, 2022).

While not binding on this Court, Stewart is instructive because the issue is
identical and the circumstances nearly identical. Both Stewart and Inniss were
in federal custody. Both qualified for FTC days. Both received an initial allotment
of FTC days that was incorrectly calculated. And both had no further FTC days
credited or applied to their sentence because of the BOP's policy to not recalculate
any further FTC days by until their automated system is implemented. That automated
system is still not implemented, and any date of implementation remains speculative.
Also, Stewart had not fully exhausted his administrative remedies at the time he
filed his §2241 Petition, much like Mr. Inniss.

Ultimately, the Stewart Court granted the Writ of Habeas Corpus and ordered
the BOP to award Stewart all additional earned FTC days, and to continue to "reevaluate"
Stewart's FTC's "at regular intervals." This Court should do the same for Mr. Inniss.
Note that in Stewart, the BOP corrected his initial allotment of FTC days prior
to the Court's decision, and so correction of that initial FTC allotment was not
included in the Court's Order, but should be for Mr. Inniss.

## CONCLUSION

The BOP has not properly calculated or applied FTC days (sentence credits) for Mr  Inniss as required under the First Step Act and the Code of Federal Regulations. Doing so will change Mr. Inniss's release date to on or around 09/16/2022, a mere 5 weeks from today. Requiring Mr. Inniss to fully exhaust his remedies will lead to the irreparable harm of false imprisonment.

WHEREFORE, based upon the foregoing, Donville Inniss, pro se petitioner, respectfully requests that this Honorable Court GRANT this Writ of Habeas Corpus and ORDER the BOP to (1) properly recalculate his earned FTC days through the date of the Court's decision, (2) apply those FTC days towards early release in compliance with federal regulations, and (3) continue to recalculate and apply Mr. Inniss's FTC days at a regular interval of every 30 days. In addition, because an earlier release date will make Mr. Inniss eligible for and earlier halfway house date, he asks this Court to ORDER the BOP to submit him for a new halfway house date.

Respectfully Submitted,

Date: 08-19-22

Donville Inniss
pro se
Reg. No. 70853-018
FCI Milan
P.O. Box 1000
Milan, MI. 48160

## CERTIFICATE OF SERVICE

I, Donville, Inniss, declare under penalty of perjury that I filed this petition by placing a true and correct copy in the Institutional Mail, pre-paid USPS First Class, on August 17, 2022, addressed to the Clerk of the U.S. District Court for the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, MI. 48226.

<u>EXHIBIT A</u>

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:70853-018, Last Name:INNISS

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 70853-018 | Risk Level Inmate....: R-MIN |
| Inmate Name |   General Level......: R-MIN (-7) |
|   Last.........: INNISS |   Violent Level......: R-MIN (-3) |
|   First........: DONVILLE | Security Level Inmate: LOW |
|   Middle.......: | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: MIL |
| Gender.........: MALE | Start Incarceration..: 07/30/2021 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 56 | 7 | 4 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 0 | 0 | 0 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 0 | 0 | 0 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | N/A | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 3 | -6 | -2 |
| Work Programs | 0 | 0 | 0 |
| | Total | -7 | -3 |

EXHIBIT B

```
  MILHR          *        PUBLIC INFORMATION        *    08-03-2022
  PAGE 002       *          INMATE DATA             *    10:19:49
                          AS OF 08-03-2022
```

REGNO..: 70853-018 NAME: INNISS, DONVILLE

```
                   RESP OF: MIL
                   PHONE..: 734-439-1511    FAX: 734-439-5534
FSA ELIGIBILITY STATUS IS: ELIGIBLE
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 11-29-2022

```
FINAL STATUTORY RELEASE FOR INMATE.: 04-09-2023 VIA GCT REL
           WITH APPLIED FSA CREDITS.:  59  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 02-09-2023 VIA FSA REL
```

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION...........: NEW YORK, EASTERN DISTRICT
DOCKET NUMBER...................: 18CR134 [KAM]
JUDGE...........................: MATSUMOTO
DATE SENTENCED/PROBATION IMPOSED: 04-27-2021
DATE COMMITTED..................: 07-30-2021
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $300.00        $00.00          $00.00       $00.00
```

RESTITUTION...: PROPERTY: NO  SERVICES: NO     AMOUNT: $00.00

---------------------CURRENT OBLIGATION NO: 010 ---------------------------
```
OFFENSE CODE....:  548     18:1956 RACKETEERING
OFF/CHG: 18:1956(H), AND 18:1956(A)(2)(A), MONEY LAUNDERING CONSPIRACY,
         CLASS C FELONY, CT 1,
         18:956(A)(2)(A) MONEY LAUNDERING, CLASS C FEL CTS 2-3
```

```
 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   24 MONTHS
 TERM OF SUPERVISION............:    2 YEARS
 DATE OF OFFENSE................: 04-30-2016
```

G0002      MORE PAGES TO FOLLOW . . .

```
  MILHR        *          PUBLIC INFORMATION        *      08-03-2022
PAGE 003 OF 003 *            INMATE DATA            *      10:19:49
                          AS OF 08-03-2022
```

REGNO..: 70853-018 NAME: INNISS, DONVILLE

```
                 RESP OF: MIL
                 PHONE..: 734-439-1511   FAX: 734-439-5534
------------------------CURRENT COMPUTATION NO: 010 -------------------------
```

COMPUTATION 010 WAS LAST UPDATED ON 01-20-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 09-09-2021 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 07-30-2021
TOTAL TERM IN EFFECT............:   24 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    2 YEARS
EARLIEST DATE OF OFFENSE........: 04-30-2016

JAIL CREDIT.....................:  FROM DATE    THRU DATE
                                   08-04-2018   08-06-2018

TOTAL PRIOR CREDIT TIME.........: 3
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 108
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 04-09-2023
ELDERLY OFFENDER TWO THIRDS DATE: 11-25-2022
EXPIRATION FULL TERM DATE.......: 07-26-2023
TIME SERVED.....................:    1 YEARS      8 DAYS
PERCENTAGE OF FULL TERM SERVED..: 51.0
PERCENT OF STATUTORY TERM SERVED: 59.9

PROJECTED SATISFACTION DATE.....: 02-09-2023
PROJECTED SATISFACTION METHOD...: FSA REL
     WITH FSA CREDITS INCLUDED...: 59
```

G0000       TRANSACTION SUCCESSFULLY COMPLETED

EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

Robert S. Stewart, Jr.,
Reg. No.

   Petitioner,

    v.

WARDEN, FCI TALLADEGA,

   Respondent.

:
:
:
:
:
:
:
:
:
:
:

CASE NO.: 1:22-cv-00294-MHH-JHE

## DECLARATION OF SUSAN GIDDINGS

  I, SUSAN GIDDINGS, hereby declare and state the following:

1. I am an employee of the United States Department of Justice, Federal Bureau of Prisons ("BOP"). Specifically, I am Chief of the Unit Management Section of the Correctional Programs Branch ("CPB"), which is organized under the Correctional Programs Division ("CPD") in the BOP's Central Office located in Washington, D.C. I have worked for the BOP since February 1991 and have been the Unit Management Section Chief since December 2019.

2. As the Unit Management Section Chief, I am responsible for overseeing Correctional Systems and the BOP's national Victim and Witness Program. Additionally, I have been intimately involved in the development and implementation of the BOP's FSA procedures. As such, I work closely with the Office of Research and Evaluation ("ORE") and the Office of Information Technology ("OIT"). As part of my duties,

I also have access to BOP files maintained in the ordinary course of business related to inmates incarcerated within the BOP, including the SENTRY database.[1]

3. Petitioner, Robert S. Stewart Jr., federal register number 28576-509, is an inmate currently incarcerated on home confinement. Petitioner alleges that the BOP improperly calculated his First Step Act ("FSA") time credits.

4. Upon the request of BOP legal staff, I have reviewed the BOP's calculation of Petitioner's FSA time credits. For reasons that are not apparent to me, Petitioner's FSA time credits were in fact incorrectly calculated at the time he filed his petition. I have attached Attachment 1, a copy of the original FSA calculation indicating 61 days of FSA credit, and Attachment 2 that includes the updated FSA calculation indicating Petitioner is receiving 75 days of FSA credit. As reflected below in Attachment 2, Petitioner's FSA time credits are now properly calculated at 75 days. ORE reviewed Petitioner's records and manually calculated his FSA time credits. I personally reviewed ORE's calculation and conducted my own independent calculation. I concur with ORE's calculation of 75 days.

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

5. A true and correct copy of Petitioner's complete sentence computation data as it existed at the time that he filed the petition titled "SENTENCE MONITORING COMPUTATION DATA" is attached to this declaration as Attachment 1. This report was generated on April 12, 2022, and shows the following:

   a. On June 16, 2021, the United States District Court in the Eastern District of Virginia sentenced Petitioner to a sentence of 21 months of imprisonment and three years of supervised release in case numbers 1:21CR00005-001 for violating 18 U.S.C. 1001(A)(2), 1343, & 641 for false statements, wire fraud, and theft of government funds. Attachment 1, p. 2.

   b. On July 28, 2021, Petitioner voluntarily surrendered to the Federal Correctional Institution in Talladega, Alabama, ("FCI Talladega") to commence his federal sentence. Petitioner's full term release date is April 7, 2023. Attachment 1, p. 1, & 2.

   c. Petitioner's FSA eligibility status reflects "eligible," meaning he is eligible to apply earned time FSA credits towards his statutory release date. Attachment 1, p. 1.

-3-

d. Petitioner's final statutory release date via good conduct time release reflects January 3, 2023. This date is what was formerly referred to as a good conduct time release date. It is calculated by subtracting any earned and projected good conduct time from his full-term release date. In this case, Petitioner's earned and projected good conduct time is 94 days, and his full-term release date is April 7, 2023. His statutory release date is January 3, 2023, because it is 94 days less than his full-term release date. This date does not include his FSA credits. Attachment 1, p. 1.

e. The report generated on April 12, 2022, shows Petitioner's FSA credits reflects 61 days. Attachment 1, p. 1.

f. Petitioner's projected release date via FSA reflects November 3, 2022, which is 61 days less than his statutory release date, January 3, 2023. However, as explained below the FSA credits were calculated incorrectly. Attachment 1 p. 1.

6. BOP recently did a recalculation of Petitioner's FSA credits. A true and correct copy of Petitioner's complete sentence computation data titled "SENTENCE MONITORING COMPUTATION DATA" is attached to this declaration as

Attachment 2. This report was generated on April 27, 2022 and shows the two changes to Attachment 1, generated on April 12, 2022:

    a. Petitioner's FSA credits reflects 75 days.[2] Attachment 2, p. 1.

    b. Petitioner's projected FSA release date reflects October 20, 2022, which is 75 days before his statutory release date via good conduct time release of January 3, 2023. Attachment 2, p. 1.

7. On January 13, 2022, the Department of Justice announced that BOP had finalized the FSA time credit rule and transmitted it to the Federal Register for publication. The final rule was published on January 19, 2022. This final rule explains BOP procedures regarding implementation of the specific provisions, including those related to the earning and application of FSA time credits.

8. The BOP has already begun implementing the FSA final rule and will continue to do so on a rolling basis. BOP has already begun applying FSA time credits. As of January 31, 2022, thousands of inmates have already been released to community custody, with hundreds more expected to be released to community supervision

---

[2] This reflects an additional 14 days of FSA credit from the initial calculation in Attachment 1.

within 30 days.  It is anticipated that in the months to come, thousands more will be eligible for release.

9.  On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule.  Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement.  These interim procedures will remain in effect during this initial period and will continue pending the completion of an auto-calculation application to BOP's real-time information system (known as SENTRY) and full integration between SENTRY and BOP's case management system (known as INSIGHT).

10. During the initial period and beyond, BOP's focus and attention is on ensuring the accurate calculation and application of FSA time credits.

11. For purposes of FSA time credit calculations, BOP is in the process of creating and implementing an application to fully automate calculations so that ORE will no longer have to manually calculate time credits for each inmate.  BOP expects to "go live" with this application in the coming months.

12. In the meantime, the BOP decided to set certain cutoff dates for manual FSA time credit calculations to ease the burden on staff. Once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system. In other words, until the automated system is implemented, Petitioner's calculation will remain at 75 days despite his eligibility to earn additional days each month.

13. Under the interim procedures, the BOP is calculating credit based on the total number of days in the inmate's designated facility, divided by 30 days (one-month average), and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels which is applicable to Petitioner).

14. The BOP uses the date in which an inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, whichever is later, as the start date for calculation purposes. Batch data is available monthly and is extracted on the last Saturday of the last full week of the month. Beginning on December 25, 2021, monthly data sets of inmates, who are within 24 months of their statutory release data, were extracted and time credits were calculated.

15. Due to his impending statutory release date on January 3, 2023, the BOP grouped
    Petitioner in the initial batch of calculations with a cutoff date of December 25,
    2021. The start date for Petitioner's FSA calculations is July 28, 2021, the date he
    arrived at his designated institution. He remained at his designated institution, and in
    good standing between July 28, 2021, and December 25, 2021. Thus, he had a total
    of 150 days of eligible time. Using the interim procedures, the FSA calculation was
    done as follows: 150 days, divided by 30 days, times 15 days = 75 days. Accordingly,
    Petitioner earned 75 days of FSA credit for the time he served between July 28, 2021,
    and December 25, 2021.

16. To date, ORE has not recalculated Petitioner's time credits to reflect credit for the
    past four months (January – April) despite his eligibility to earn time credits. Like
    many other similarly situated BOP inmates, Petitioner's FSA time calculations are
    governed by the interim guidance. At this time, the BOP does not intend to
    recalculate FSA time credits for inmates that have already been reviewed, until
    implementation of the automated system. As stated above, once the automated
    system is up and running Petitioner's FSA credits will be updated to include any

-8-

additional FSA credit that he is entitled to, that have not already been included in this initial calculation.

17. My understanding is that OIT is working diligently to implement the automated system. Although it is unclear when exactly the system will go live, my understanding is that OIT is in the final stages of software testing and could potentially go live within the next 90 days barring any unforeseen circumstances.

18. The BOP does not calculate time credits based on future projected days. Credit is earned as it accumulates. This is because an inmate does not earn time credit for days in custody if they refuse to participate in certain programs or are placed in the Special Housing Unit. It is entirely possible Petitioner may not earn time credits in the future.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of April, 2022.

SUSAN GIDDINGS
Unit Management Section, Chief
Correctional Programs Branch
Federal Bureau of Prisons

EXHIBI D

70853-018

MIL-1330.18

January 4, 2016

PAGE 7

Attachment B/Part 1
FCI/FDC Milan Michigan
**Attempt at Informal Resolution**

REMEDY #_____

Inmate's Name: INNISS, Donville

Registration Number 70853-018 Housing Unit B²

## ATTEMPT AT INFORMAL RESOLUTION:

1.  Briefly stated the complaint and requested corrective actions.

    As at 07/30/22 I have earned 180 days under the First Step Act, but to date only 59 days have been credited. Therefore I request that the outstanding 121 days of FSA earned time credits be applied to reduce my sentence.

2.  Document your efforts to resolve the matter to include policies reviewed.
    Note any reasons an informal resolution could not be achieved.

    Meetings and Cop-Outs with Case Manager. Unable to resolve at his level.

Inmate Signature: _____
Date: _____08/03/22_____
Inmate Printed Name: _DONVILLE O. INNISS_

Unit Counselor Signature: _____
Date: _____
Unit Counselor Printed Name: _____

BP-S148.055 **INMATE REQUEST TO STAFF**
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO: Mr. LaVesser (Case Manager) | DATE: 05-19-22 |
|---|---|
| FROM: Denville Inniss | REGISTER NO.: 7C853C15 |
| WORK ASSIGNMENT: B-2 ORDERLY | UNIT: B-2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.  Continue
on back, if necessary.  Your failure to be specific may result in no action being taken.
If necessary, you will be interviewed in order to successfully respond to your request.)

Query. Under the FSA, do I qualify for 10 or 15 days per 30 days served? My calculations are that if it is 10 days then, my statutory release date projected would be 12/20/22 and with 90 days half way house commencing 9/21/22. Should it be 15 days credit per 30 days then my statutory release date projected would be 10/22/22 with 90 days half way house commencing 07/22/22. Grateful for a discussion on this at your earliest convenience.

Nb. This is based on my understanding of the FSA and is subject to correction. Dates without GCT are just there. See copy of section of FSA attached and highlighted.

(Do not write below this line)

DISPOSITION:

Signature Staff Member                    Date

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)        This form replaces BP-148.070 dated Oct 86
                                            and BP-S148.070 APR 94

EXHIBIT E

DEPARTMENT OF JUSTICE                                      **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** Inniss, Donville                      70853-018          B2          FCI Milan
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST** To date I have been credited with 59 days of FSA Time Credits. And my scheduled commencement date for half-way house is 11/09/22. However, it is my considered opinion that having served 12 months in prison and maintained a minimum recidivism risk level of minimum, I should be earning 15 days for every 30 days served. Which means that to date I should have earned and been credited with 190 days of FSA Time Credits. Therefore, bringing my release date to September of 2022. Greatful for your investigation and for my FSA earned time credits to be applied without further delay.

08- 16 - 22
DATE                                          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

DATE                                          WARDEN OR REGIONAL DIRECTOR
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                 CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

DATE                                          RECIPIENT'S SIGNATURE (STAFF MEMBER)
                                                                        BP–229(13)

EXHIBIT F

**ROBERT S. STEWART, JR., Petitioner, v. WARDEN SEAN SNIDER, Respondent.**
**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, EASTERN
DIVISION**
**2022 U.S. Dist. LEXIS 100512**
**Case No.: 1:22-cv-00294-MHH-JHE**
**May 10, 2022, Decided**
**May 10, 2022, Filed**

**Editorial Information: Subsequent History**

Adopted by, Motion denied by, Writ of habeas corpus granted **Stewart v. Snider**, 2022 U.S. Dist. LEXIS 100482 (N.D. Ala., June 6, 2022)

**Counsel**          {2022 U.S. Dist. LEXIS 1}Robert S Stewart, Jr, Petitioner, Pro se, Anniston, AL.

                    For S Snider, Respondent: Mary Lester Marshall, United States Attorneys Office, Birmingham, AL.

**Judges:** JOHN H. ENGLAND, III, UNITED STATES MAGISTRATE JUDGE.

**Opinion**

**Opinion by:**        JOHN H. ENGLAND, III

**Opinion**

**REPORT AND RECOMMENDATION**

Petitioner Robert S. Stewart, Jr. ("Stewart" or "Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking an order directing the Bureau of Prisons ("BOP") to apply First Step Act ("FSA") Earned Time Credits ("ETC") toward his remaining home confinement term. (Doc. 1). Because Stewart's challenge to the BOP's calculation of credits is a challenge to the execution of his sentence, the petition is properly brought as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court for the district in which Stewart is in custody. *See United States v. Kinsey*, 393 F. App'x 663, 664 (11th Cir. 2010) (per curiam) (noting that § 2241 "is the appropriate means by which an inmate may challenge the [BOP's] calculation and execution of his sentence") (citing *Bishop v. Reno*, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000)). The petition was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for preliminary review. Upon consideration, the undersigned recommends Respondent's Motion to Dismiss (doc. 11) be **DENIED**. The undersigned further recommends the petition be{2022 U.S. Dist. LEXIS 2} **GRANTED** to the extent described below.

**I. Relevant Facts and Claims**

Stewart is a federal inmate currently on home confinement within this district. (Doc. 1). On June 16, 2021, the United States District Court for the Eastern District of Virginia sentenced Stewart to a 21-month term of imprisonment for False Statements, Wire Fraud, and Theft of Government Funds. (Doc. 11-1 at ¶ 5; doc. 11-3). The Sentencing Court ordered Stewart to voluntarily surrender to his

DISHOT                                                1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

designated facility as directed by the BOP. (Doc. 11-3.). On July 28, 2021, Stewart voluntarily surrendered to the Federal Correctional Institution ("FCI") Talladega Satellite Camp to commence his federal sentence. (Doc. 11-1 at ¶ 6). According to Respondent, Stewart's current projected First Step Act ("FSA") release date is October 20, 2022. (Id. at ¶ 18; doc. 11-2). Since February 2022, Stewart has been in the BOP's custody on home confinement. (Doc. 11-6).

Stewart requests the Court order the BOP to apply 15 days of ETC for each 30 days of his confinement between January and April 2022 based on his completion of nine Evidence-Based Recidivism Reduction ("EBBR") courses. (Docs. 1, 6, & 7).

Specifically, Stewart contends he is entitled{2022 U.S. Dist. LEXIS 3} to ETC of 15 days per month, multiplied by 9 months, which is 135 days of FSA ETC. (Doc. 14 at 14). According to Stewart, the BOP has only granted him 75 days; thus, his projected release date of October 20, 2022, should be August 19, 2022, to include the additional 60 days. (Id.; see also doc. 7 at 3, 4). Additionally, Stewart requests the Court order the BOP to apply projected ETC for the months of May and June 2022, which would move his projected release date to July 19, 2022. (Doc. 7 at 4).

## II. Procedural History

On April 29, 2022, Respondent filed a response to Stewart's petition seeking to have the petition summarily dismissed without an evidentiary hearing. (Doc. 11). That same day, the undersigned entered an order informing Stewart of his right to file affidavits or other materials in opposition to the response and of the possible consequences of not responding. (Doc. 12). The undersigned further advised that, thereafter, the petition would be taken under advisement, and the undersigned would enter a report and recommendation without further notice. (Id.). On May 2, 2022, the Court received a document from Stewart titled "Petitioner's Reply Opposing Summary Respondents' Motion{2022 U.S. Dist. LEXIS 4} for Summary Judgment." (Doc. 14). The petition is ripe for review.

## III. Analysis

### A. Exhaustion Requirement

Generally, a federal prisoner must exhaust his administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. See Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015) (quoting Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) ("'We agree with the reasoning of our sister circuits and hold that prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements.'"). While Santiago-Lugo altered Eleventh Circuit law to the effect that it "is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding," as the Court also held, "that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." Id. at 474-75. The Eleventh Circuit further explained that "because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." Santiago-Lugo, 785 F.3d at 475.

Simply put, "[t]he exhaustion requirement is{2022 U.S. Dist. LEXIS 5} still a requirement; it's just not a jurisdictional one." Santiago-Lugo, 785 F.3d at 475. A petitioner who has failed to exhaust administrative remedies will find his petition dismissed on those grounds. See, e.g., Villagran v. United States, No. 7:18-CV-0101-LSC-JEO, 2020 WL 3022494, at *2 (N.D. Ala. May 13, 2020), report and recommendation adopted, No. 7:18-CV-00101-LSC-JEO, 2020 WL 3000964 (N.D. Ala. June 4, 2020). Moreover, a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion

DISHOT

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Exceptions to this exhaustion requirement apply only in "'extraordinary circumstances'" and the petitioner "'bears the burden of demonstrating the futility of administrative review.'" *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)).

"In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules. *See Woodford*, 548 U.S. at 90-91, (addressing the exhaustion requirement in the Prison Litigation Reform Act)." *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016) (some internal citations omitted). The BOP has a four-step process for resolving complaints by prisoners. 28 C.F.R. § 542.10. Initially, a prisoner must attempt to informally resolve the complaint with staff. *Id.* § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a **{2022 U.S. Dist. LEXIS 6}** Request for Administrative Remedy to the warden. *Id.* § 542.14. If the prisoner is unsatisfied with the warden's response, he may appeal to the Regional Director. *Id.* § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel within thirty days of the Regional Director's response. *Id.*

Here, Stewart acknowledges that he did not exhaust all available administrative remedy requests before seeking relief under 28 U.S.C. § 2241. (*See* doc. 14 at 15). Instead, Stewart contends he attempted to comply with the BOP's administrative remedy process, but he was released to home confinement before being able to submit the proper forms. (Doc. 14 at 14-15, 27-32; *see also* doc. 7 at 3). Stewart also argues that he attempted to follow the administrative remedy process, but that he did not get a timely response from the BOP and that continuing to wait would "negatively impact[]" him. (Doc. 14 at 18-19).

The Eleventh Circuit has suggested that exhaustion may be excused where "'requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action.'" *Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146-47, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992)). This occurs when a petitioner can show "'irreparable harm if unable to secure immediate judicial consideration **{2022 U.S. Dist. LEXIS 7}** of his claim.'" *Id.* (quoting *McCarthy*, 503 U.S. at 147).

Stewart did not exhaust his administrative remedies. Nonetheless, considering Stewart's impending release date, balancing the interests favors promptly deciding the issues Stewart raises over the institutional interests protected by the exhaustion defense.

## B. Merits of First Step Act Earned Credit Time Claim

### 1. Authority to Calculate Sentences

The Attorney General, through the BOP, administers inmate sentences. *See* 18 U.S.C. § 3621(a). The BOP has exclusive jurisdiction to determine sentence credits for inmates in the first instance. "After a district court sentences a federal offender, the Attorney General, though the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992). The BOP utilizes extensive policies in this administration. Stewart alleges that the BOP improperly calculated his sentence; however, Respondent contends Stewart does not establish that the BOP failed to follow its policies. (Doc. 11 at 6-7).

### 2. Calculation of Stewart's Sentence

According to 18 U.S.C. § 3585(a), as referenced in the BOP Program Statement 5880.28, Sentence Computation Manual ("CCCA of 1984"), a sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation **{2022 U.S. Dist. LEXIS 8}** to the

DISHOT                                                   3

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

official detention facility where the sentence is to be served. On July 28, 2021, Stewart voluntarily surrendered to FCI Talladega Satellite Camp to commence his federal sentence. (Doc. 11-1 at ¶ 6; doc. 11-6). Thus, the BOP calculated Stewart's federal sentence as commencing on July 28, 2021, the date he self-surrendered.

The application of prior custody credit toward a federal sentence is governed by 18 U.S.C. § 3585(b), which states:

> (b) Credit for prior custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

> (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence.*18 U.S.C. § 3585(b) (emphasis added). Because the time Stewart spent in custody from February 3, 2021, through February 22, 2021, was not credited towards any other sentence, the BOP granted Stewart 20 days of credit toward his federal sentence for this time period. (Doc. 11-1 at ¶ 12; doc. 11-2).

According to the BOP Program**{2022 U.S. Dist. LEXIS 9}** Statement 5880.28, CCCA of 1984, the BOP applies good conduct time ("GCT") in accordance with 18 U.S.C. § 3624(b). The BOP has interpreted this statute to apply GCT only for time served rather than the length of the sentence imposed. *See Barber, et al. v. Thomas, et al.*, 560 U.S. 474, 130 S. Ct. 2499, 177 L. Ed. 2d 1 (2010) (upholding this interpretation). Prior to the FSA, the BOP would award 54 days of GCT for each year served. (Doc. 11-1 at ¶ 13). On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* FSA, Public Law 115-391. Prior to the enactment of the FSA, GCT credit was applied only for time *actually served*, rather than the length of the sentence imposed. The FSA amended 18 U.S.C. § 3624(b), to provide for the application of GCT credit "of up to 54 days for each year of the prisoner's sentence imposed by the court[,]" which is a change to the prior law. (Doc. 11-1 at ¶ 14; doc. 11-9). The amendments to § 3624(b), took effect on July 19, 2019. The changes made to the GCT earnings were made retroactive, but applicable only to sentences not yet satisfied as of July 19, 2019; therefore, any sentence satisfied prior to the effective date of the FSA is not eligible to receive additional GCT credits. (Doc. 11-1 at ¶ 15; doc. 11-10).

According to Respondent, Stewart is currently earning 54 days of GCT and**{2022 U.S. Dist. LEXIS 10}** projected to earn a total of 94 days of good conduct time credit and has no disallowances. (Doc. 11-1 at ¶ 16; doc. 11-10; doc. 11-11). Stewart does not dispute this calculation. (*See* doc. 14 at 2). Additionally, among several other reforming provisions, the FSA provides an incentive for inmate participation in Evidence-Based Recidivism Reduction ("EBRR") programming, such as classes and productive activities. The FSA calls this incentive Earned Time Credits ("ETC" or "ECT"). To earn these credits, inmates must complete 30 days of pre-approved, qualifying programming, defined as EBRR courses and Productive Activities, to earn 10 days of ETC. This ETC can either be applied to lengthen an inmate's pre-release custody, such as home confinement or half-way house placement, or be applied to early transfer to supervised release, i.e., early satisfaction of the inmate's sentence. To further qualify, inmates must be classified with a Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") risk score of "low" or "minimum."

Under 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") was required to "publish[] the risk and needs assessment system on July 19, 2019." *Hand v. Barr*, No.**{2022 U.S. Dist. LEXIS 11}** 1:20-cv-348, 2021 WL 392445, at *2 (E.D. Cal. Feb. 4, 2021) (citing Press Release, U.S. Dep't of Justice, *Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System* (July 19, 2019),

DISHOT                                                          4

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and). With respect to implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

(1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter--

(A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;

(B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new{2022 U.S. Dist. LEXIS 12} evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

(C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

(2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--

(A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

(B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.{2022 U.S. Dist. LEXIS 13}18 U.S.C. § 3621(h)(1)-(2); see also Hand, 2021 WL 392445, at *2.

Under 18 U.S.C. § 3621(h)(1), "all inmates in the BOP system received an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ('PATTERN') by January 15, 2020." Hand, 2021 WL 392445, at *3 (citing Press Release, U.S. Dep't of Justice, Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act). Those inmates who successfully "complete[ ] evidence-based recidivism reduction programming or productive activities . . . shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). As the FSA provides, an inmate who is found "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." Id. § 3632(d)(4)(A)(ii).

The FSA specifically states that a "prisoner may not earn time credits under this paragraph for an evidence-based{2022 U.S. Dist. LEXIS 14} recidivism reduction program that the prisoner

DISHOT                                    5

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

successfully completed prior to the date of enactment of this subchapter." *Id.* § 3632(d)(4)(B). The BOP's website states that "'FSA Time Credits (FTC) may only be earned for completion of assigned evidence-based recidivism reduction programs or productive activities authorized by BOP and successfully completed on or after January 15, 2020.'" Federal Bureau of Prisons, *First Step Act - Frequently Asked Questions*, https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits (last visited May 5, 2022).

"The [First Step Act] provides that by January 15, 2020, BOP 'implement and complete the initial intake risk and needs assessment for each prisoner, begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination, and begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers.'" PATTERN at 5 (quoting 18 U.S.C. §§ 3621(h)(1)(A)-(B)). "'In order to carry out [18 U.S.C. § 3621(h)(1)], so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need,' BOP shall 'provide such evidence-based recidivism reduction{2022 U.S. Dist. LEXIS 15} programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A).'" *Id.* (quoting 18 U.S.C. § 3621(h)(2)(A)). As a result, the FSA gives the BOP "two years-until January 15, 2022 . . . to 'phase-in' the evidence-based recidivism reduction programs and productive activities for all prisoners." *Id.* (quoting 18 U.S.C. § 3621(h)(2)(A)).

On January 13, 2022, the DOJ announced that the BOP had finalized the FSA time credit rule and transmitted it to the Federal Register for publication. (Doc. 11-14 at ¶ 7). The final rule was published on January 19, 2022. (*Id.*). This final rule explains the BOP procedures regarding implementation of the specific provisions, including those related to the earning and application of FSA time credits. (*Id.*). The BOP has already begun implementing the FSA final rule and will continue to do so on a rolling basis. (*Id.* at ¶ 8). The BOP has already begun applying FSA time credits. (*Id.*). As of January 31, 2022, thousands of inmates have already been released to community custody, with hundreds more expected to be released to community supervision within 30 days. (*Id.*). It is anticipated{2022 U.S. Dist. LEXIS 16} that in the months to come, thousands more will be eligible for release. (*Id.*).

On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule. (Doc. 11-14 at ¶ 9). Interim procedures were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement. (*Id.*). According to Respondent, these interim procedures will remain in effect during this initial period and will continue pending the completion of an auto-calculation application to the BOP's real-time information system (known as SENTRY) and full integration between SENTRY and the BOP's case management system (known as INSIGHT). (*Id.*). Respondent assures the Court that, during the initial period and beyond, the BOP's focus and attention is on ensuring the accurate calculation and application of FSA time credits. (*Id.* at ¶ 10).

For purposes of FSA time credit calculations, Respondent asserts that the BOP is in the process of creating and implementing an application to fully automate calculation so that the BOP Office of Research and Evaluation ("ORE") will no longer have to manually calculate time credits for each inmate. (Doc.{2022 U.S. Dist. LEXIS 17} 11-14 at ¶ 11). The BOP expects to "go live" with this application in the coming months. (*Id.*). Currently, to ease the burden on staff, the BOP decided to set certain cutoff dates for manual FSA time credit calculation. (*Id.* at ¶ 12). Once an inmate's time credit is calculated, it will not be recalculated again until implementation of the automated computation system. (*Id.*).

Under these interim procedures, the BOP is calculating credit based on the total number of days in

DISHOT                                                          6

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the inmate's designated facility divided by 30 days (one-month average) and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels). (Doc. 11-14 at ¶ 13). BOP uses the date an inmate arrives at his/her initial designated facility or the FSA enactment date in December 2018, whichever is later, as the start date for calculation purposes. (*Id.* at ¶ 14). Batch data is available monthly and is extracted on the last Saturday of the last full week of the month. (*Id.*). Beginning on December 25, 2021, monthly data sets of inmates, who are within 24 months of their statutory release date were extracted and their FSA time credits were calculated. (*Id.*).

Due to his impending statutory release date, the{**2022 U.S. Dist. LEXIS 18**} BOP grouped Stewart in the initial batch of calculations with a cutoff date of December 25, 2021. (Doc. 11-14 at ¶ 15). Respondent admits that, originally, the BOP incorrectly calculated Stewart's FSA credits to be 61 days. (Doc. 11-14 at ¶ 4; doc. 11-15). However, the BOP conducted a new calculation, which resulted in Stewart receiving 75 days of FSA credit. (Doc. 11-14 at ¶ 4; doc. 11-16).

The start date for Stewart's FSA calculations is July 28, 2021, the date he arrived at his designated institution. (Doc. 11-14 at ¶ 15). He remained at his designated institution, and in good standing between July 28, 2021, and December 25, 2021. (*Id.*). Thus, he had a total of 150 days of eligible time. (*Id.*). Using the interim procedures, the FSA calculation was performed as follows: 150 (Stewart's eligible days) / by 30 days (one month average) x 15 (allowable credit for inmates like Stewart with Low or Minimum risk levels) = 75. (*Id.*; doc. 11-16). Accordingly, Stewart earned 75 days of FSA credit for the time he served from July 28, 2021, through December 25, 2021. (Doc. 11-14 at ¶ 15; doc. 11-16).

To date, ORE has not recalculated Stewart's FSA ETC calculations to reflect credit for the past{**2022 U.S. Dist. LEXIS 19**} four months (approximately January – April) despite his eligibility to earn them. (Doc. 11-14 at ¶ 16). Like many other similarly situated BOP inmates, Stewart's FSA time calculations are governed by the interim guidance. (*Id.*). At this time, the BOP does not intend to recalculate FSA time credits for inmates that have already been reviewed, until implementation of the automated system. (*Id.*). As stated above, once the automated system is up and running Stewart's FSA credits will be updated to include any additional FSA credit that he is entitled to, that have not already been included in this initial calculation. (*Id.*). According to Respondent, the BOP Office of Information Technology ("OIT") is working diligently to implement the automated system. (*Id.* at ¶ 17). Although it is unclear when exactly the system will go live, OIT is in the final stages of software testing and could potentially go live within the next 90 days, or approximately early August 2022, barring any unforeseen circumstances. (*Id.*).

The BOP does not calculate time credits based on future projected days. (Doc. 11-14 at ¶ 18). Credit is earned as it accumulates. (*Id.*). This is because an inmate does not earn time{**2022 U.S. Dist. LEXIS 20**} credit for days in custody if they refuse to participate in certain programs or are placed in the Special Housing Unit, (*id.*), and it is possible Stewart may not earn time credits in the future. Thus, Stewart's request that the Court order the BOP to apply projected FSA ETC to his sentence for May and June 2022, which he has not yet earned (doc. 7 at 4), is due to be denied.

Respondent contends that the constantly evolving FSA rules and regulations have required the BOP to use its discretion in how and when to calculate FSA credits for all BOP inmates, including Stewart. (Doc. 11 at 17). The BOP has calculated Stewart's FSA ETC and awarded him 94 days of GCT and 75 FSA days for the time he served from July 28, 2021 through December 25, 2021. Once the new system "goes live," Respondent contends that Stewart, just like every other inmate who was in the batch with a cutoff date of December 25, 2021, will have his FSA credits updated automatically and be awarded any credits for the time period after December 25, 2021. (Doc. 11 at 17).

While there does not appear to be anything inherently wrong with the BOP's interim guidance, its

DISHOT                                                          7

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

application to inmates like Stewart, who are nearing the end{2022 U.S. Dist. LEXIS 21} of their custody term causes concern. Based only on the credits applied to Stewart's sentence as of December 25, 2021, the BOP calculates his projected release date as October 20, 2022. (Doc. 11-1 at ¶ 18; doc. 11-14 at ¶ 6). According to Stewart, applying 60 days for ETC earned between the BOP's last calculation on December 25, 2021 and April 28, 2022 moves his projected release date to August 2022. (Doc. 7 at 3, 4; doc. 14 at 14, 24). If correct, requiring Stewart to wait until August 2022, or longer, to receive credits for time earned after December 25, 2021 could likely prejudice him by depriving him of credits he has earned.1 As Respondent states, it is unclear when the automated system will be up and running. While it could be within the next 90 days, that is not guaranteed, and Respondent even hedges this statement with the caveat "absent unforeseen circumstances." (*See* doc. 14 at 16-17). Thus, the assertion that Stewart will receive these credits within the next couple months, i.e., in time for them to impact the remainder of his sentence, is speculative.

Respondent does not expressly dispute that Stewart has earned additional ETC between BOP's last calculation on December{2022 U.S. Dist. LEXIS 22} 25, 2021, and April 28, 2022, which could result in an earlier release date. (Doc. 11 at 16). If Stewart has indeed earned additional credits during his time, then they should be awarded to him and reflected in his sentence. Additionally, because of the uncertainly of the automated system's implementation and Stewart's approaching release date, it is necessary for BOP to reevaluate the application of Stewart's credits at regular intervals, not to exceed every 60 days.

## IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss (doc. 11) be **DENIED**. The undersigned **FURTHER RECOMMENDS** the petition for a writ of habeas corpus be **GRANTED**, and the BOP be ordered to award Stewart any credit earned between the BOP's December 25, 2021 calculation and April 28, 2022; and the BOP be further ordered to reevaluate Stewart's earned credit time at regular intervals not to exceed every 60 days until the implementation of the automated system.

## V. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the{2022 U.S. Dist. LEXIS 23} report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections should also specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district{2022 U.S. Dist. LEXIS 24} judge must conduct a hearing if required by law. Otherwise, the district judge may

DISHOT                                8

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE this 10th day of May, 2022.

/s/ John H. England, III

**JOHN H. ENGLAND, III**

UNITED STATES MAGISTRATE JUDGE

DISHOT                                                    9

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Donville Inglesion #70853-012
Federal Correctional Institution
P.O. Box 1000
Milan, MI. 48160





7020 0640 0000 4744 1458

⇔56366-039⇔
Clerk Of The
U.S. District Court
231 W Lafayette BLVD
Fifth Floor
Detroit, MI 4822E
United States